UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PERFORMANCE DYNAMICS, INC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 1:13-cv-298-WTL-TAB |
| | ) |
| TIMOTHY W. FLYNN, ANDREW | ) |
| BENNETT, COLORADO PHYSICAL | ) |
| THERAPY SPECIALISTS, LLC, P.C., | ) |
| TEXAS PHYSICAL THERAPY | ) |
| SPECIALISTS, PC, | ) |
| EVIDENCE IN MOTION, LLC, | ) |
| ROBERT WAINNER, and | ) |
| LAURENCE BENZ, | ) |
| | ) |
| Defendants. | ) |

## ENTRY ON MOTION TO ENFORCE MEDIATION AGREEMENT

This cause is before the Court on the Plaintiff's motion to enforce mediation agreement (Dkt. No. 104). The motion is fully briefed,[1] and the Court, being duly advised and for the reasons set forth below, **GRANTS** the Plaintiff's motion.

### I. STANDARD

"[A] district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). An agreement to settle claims in a federal court is enforceable "just like any other

---

[1] The Court notes that the Plaintiff initially sought, pursuant to this Court's Local A.D.R. Rule 2.6(e)(3), a hearing related to its motion. *See* Dkt. No. 104 at 3. In its Entry Regarding Motion to Enforce Mediation Agreement (Dkt. No. 106), the Court explained that Local A.D.R. Rule 2.6(e)(3) is inapplicable in this instance and requested that, "[i]f either party believe[d] an evidentiary hearing [was] necessary, they shall explain why and list the witnesses to be called at the hearing and an estimate of the amount of time the hearing would take." Neither party provided the Court with such information, and the Court does not deem a hearing necessary for the purpose of ruling on the Plaintiff's motion.

contract." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007); *see also Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003) ("Settlement agreements are governed by the same general principles of contract law as any other agreement.") (citing *Ind. State Highway Comm'n v. Curtis*, 704 N.E. 1015, 1018 (Ind. 1998)). "State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements." *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016) (citations omitted). In their briefing, the parties rely on Indiana law to support their positions. The Court, accordingly, turns to Indiana substantive law in reviewing the parties' claims.

## II.    BACKGROUND

Plaintiff Performance Dynamics, Inc. ("Performance Dynamics") alleges that it maintains proprietary rights in a physical therapy methodology known as ASTYM®. ASTYM techniques require the use of topically applied proprietary hand-held instruments to treat soft tissue injuries and dysfunction. The Defendants comprise both business entities providing continuing education to physical therapists and those providing physical therapy to patients and the individuals who own or are in upper management of the defendant business entities. Performance Dynamics sued the Defendants in state court in Delaware County, Indiana, alleging breach of contract and misappropriation of confidential information in violation of the Indiana Trade Secrets Act. In February 2013, the case was removed to this Court pursuant to 28 U.S.C. §§ 1441(a) and (b)(2) and 1446(a) and (c). Performance Dynamics filed an amended complaint in September 2013, alleging additional claims of violation of the Lanham Act, common law trademark infringement, unfair competition, and tortious interference. Magistrate Judge Baker held a settlement conference in December 2013. No settlement was reached. The parties proceeded by filing a case management plan to the Court and beginning discovery.

During discovery, Performance Dynamics was granted leave to file a second amended complaint, adding Robert Wainner and Laurence Benz as defendants. In January 2015, the Defendants moved to dismiss a portion of the claims and filed counterclaims against Performance Dynamics, alleging breach of contract, fraudulent misrepresentation, and violation of the Virginia Wiretap Act. In February 2015, Performance Dynamics moved for partial summary judgment as to the Defendants' fraudulent misrepresentation and violation of Virginia Wiretap Act counterclaims.

With those motions pending, Magistrate Judge Baker held a second settlement conference on April 20, 2015. The settlement conference lasted approximately six hours. All parties were represented by counsel for the duration of the conference. A settlement agreement was executed at the conference (the "Agreement"). The Agreement was memorialized on seven pages, including two pages containing handwritten mark-ups to a document that had been provided by Performance Dynamics' counsel to defense counsel on April 17, 2015; a sheet of notebook paper with handwritten terms; and three pages containing handwritten mark-ups to a proposed permanent injunction entry provided by Performance Dynamics' counsel to defense counsel on April 16, 2015. "[T]he parties and their counsel believed they had the basis of a settlement and in good faith so advised the Court." Dkt. No. 112 at 2. Magistrate Judge Baker entered an order on April 22, 2015, indicating that "[s]ettlement discussions were held, and this case is now settled." Dkt. No. 95. In the order, Judge Baker denied the pending motions as moot, vacated all previously ordered deadlines, and directed the parties to file within 28 days "a proposed injunction and any other documents to effectuate settlement." *Id.*

Defense counsel agreed to compose a clean, typewritten version of the Agreement. On June 4, 2015, defense counsel sent a typed document entitled "Settlement Agreement and Mutual

3

Release" to Performance Dynamics' counsel. *See* Dkt. No. 113-1. The typed version intentionally omitted the following term from the Agreement: "No other instrumented soft tissue treatment shall be provided at any such facility" (the "Omitted Term"). In their briefing, the Defendants state as follows:

> The [D]efendants and their counsel acknowledge that the [Omitted Term] should have been either struck from the document that was signed at the conclusion of the settlement conference or that document [should have been] revised before signature so as to make the reference to the use of other 'instrumented soft tissue treatment' subject to the 'recommend and encourage' modifying language that was handwritten in the margin of the document [to alter another term in the same paragraph as the Omitted Term].

Dkt. No. 112 at 3-4. Neither occurred on April 20, 2015. They contend, however, that their counsel "orally advised all other persons at the mediation, including the Magistrate Judge, [Performance Dynamics]' representatives, and [Performance Dynamics]' counsel, that the [D]efendants could not and would not agree to any provision in any settlement agreement that would limit the use of treatments that individual physical therapists in their professional judgment deemed necessary and appropriate for their patients." *Id.* at 4.

Performance Dynamics now moves to enforce the terms of the Agreement, which includes the Omitted Term. Jurisdiction is properly predicated upon the diversity of citizenship between the parties.

### III.   DISCUSSION

"Indiana strongly favors settlement agreements. . . . [I]f a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement." *Georgos*, 790 N.E.2d at 453 (citations omitted). Performance Dynamics contends that a settlement agreement was formed at the April 20, 2015, settlement conference and seeks the enforcement of the terms of that agreement. The Defendants

4

respond that no enforceable contract was formed because the Agreement lacked essential terms and there was no meeting of the minds with respect to the meaning of "instrumented soft tissue treatment" in the Omitted Term, which makes the term ambiguous.[2] They also argue that, even if an enforceable contract were formed by the Agreement, the Omitted Term violates public policy, so the contract would be unenforceable due to mutual mistake.

### A.     Mutual Assent

Under Indiana law, "[t]he existence of a contract is a question of law, and the basic requirements of a contract are offer, acceptance, consideration, and a "meeting of the minds."[3] *Jonas v. State Farm Life Ins. Co.*, --- N.E.3d ----, 2016 WL 1248589, at *4 (Ind. Ct. App. March 30, 2016) (citing *Batchelor v. Batchelor*, 853 N.E.2d. 162, 165 (Ind. Ct. App. 2006)). "The cardinal rule of contract interpretation is to ascertain the intention of the parties' [sic] from their expression of it." *Centennial Mortg., Inc. v. Blumenfeld*, 745 N.E.2d 268, 277 (Ind. Ct. App. 2001). "The intent relevant in contract matters is not the parties' subjective intents but their outward manifestation of it." *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005) (citing *Centennial Mortg., Inc.*, 745 N.E.2d at 277). "A court does not examine the hidden intentions secreted in the heart of a person." *Id.* Rather, "[i]n most cases, the intent of the parties to a contract is to be determined by the 'four corners' of the contract." *Dick Corp. v. Geiger*, 783 N.E.2d 368, 374 (Ind. Ct. App. 2003) (citing *Keithley's Auction Serv. v. Wright*, 579 N.E.2d 657, 659 (Ind. Ct. App. 1991)); *see also Beverly*, 817 F.3d at 333 (referring to analogous

---

[2] The Defendants incorrectly merge two different legal arguments – whether there was a meeting of the minds and whether the Omitted Term was ambiguous. The Court uncouples them and separately examines whether there was a meeting of the minds as to the Agreement and whether "instrumented soft tissue treatment" is ambiguous.

[3] The Defendants do not allege any defenses regarding the other basic requirements of contract formation – offer, acceptance, and consideration.

5

Illinois law: "[T]he written records of the parties' actions – rather than their subjective mental processes – drive the inquiry.") (internal quotation omitted).

In this instance, the Court looks to the Agreement. By all outward appearances, the parties entered into a legally enforceable contract at the settlement conference. Specifically, they mediated their dispute, and using various documents exchanged prior to the settlement conference, they created and signed the Agreement "late in the evening at the end of a very long day of intense negotiation." Dkt. No. 112 at 2. They also indicated to Magistrate Judge Baker that they had reached an agreement settling the lawsuit. Moreover, defense counsel sent to Performance Dynamics a typed agreement on June 4, 2015, without any indication that it believed an agreement had not been reached on April 20, 2015, or that it found fault with the terms of the Agreement. *See* Dkt. No. 113-1 at 1. These facts show that the intent of the parties was to create an enforceable contract on April 20, 2015, and a meeting of minds occurred with regard to the Agreement.[4]

### B.     Ambiguity

Given the existence of a contract, the Court now analyzes whether the "instrumented soft tissue treatment" language in the Omitted Term is ambiguous. Whether a contract is ambiguous is a question of law for the court. *McCae Mgm't Corp. v. Merchants Nat. Bank & Trust Co. of*

---

[4] The Defendants state in their brief that "neither the [D]efendants nor their counsel noted the retention of the disputed sentence in the document without modification." Dkt. No. 112 at 4. Although the Defendants do not seek an equitable remedy such as reformation, the mistake the Defendants and their counsel made does not allow them to avoid the contract's terms. A contract may be avoided for unilateral mistake when "one party executes the document and the other party acts fraudulently or inequitably while having knowledge of the other's mistake." *Gierhart v. Consol. Rail Corp.-Conrail*, 656 N.E.2d 285, 287 (Ind. Ct. App. 1995). There are no allegations of such conduct here, and "equity should not intervene . . . where the complaining party failed to read the instrument, or, if he read it, failed to give heed to its plain terms." *Id.*; *see also Angel v. Powelson*, 977 N.E.2d 434, 444 (Ind. Ct. App. 2012).

6

*Indianapolis*, 553 N.E.2d 884, 887 (Ind. Ct. App. 1990); *see also Secura Supreme Ins. Co. v. Johnson*, 51 N.E.3d 356, 359-60 (Ind. Ct. App. 2016) (explaining that court determines whether contract ambiguous and jury ascertains the facts necessary to construe ambiguous contract, unless the ambiguity "can be resolved without the aid of a factual determination"). In determining whether ambiguity exists, Indiana courts consider whether "'a reasonable person would find the contract subject to more than one interpretation.'" *Citimortgage, Inc. v. Barabas*, 975 N.E. 2d 805, 813 (Ind. 2012) (quoting *Fackler v. Powell*, 891 N.E.2d 1091, 1096 (Ind. Ct. App. 2008)). "However, the terms of a contract are not ambiguous simply because a controversy exists between the parties concerning the proper interpretation of terms." *Dick Corp.*, 783 N.E.2d at 374 (citing *Ostrander v. Bd. of Dirs. of Porter Cty. Educ. Interlocal*, 650 N.E.2d 1192, 1196 (Ind. Ct. App. 1995)).

Under Indiana law, where contract terms are clear and unambiguous, Indiana courts "apply the plain and ordinary meaning of the terms and enforce the contract according to its terms." *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014) (citing *Claire's Boutiques, Inc. v. Brownsburg Station Partners LLC*, 997 N.E.2d 1093, 1098 (Ind. Ct. App. 2013)). However, "[i]f necessary, the text of a disputed provision may be understood by referring to other provisions within the four corners of the document." *Id.* If the Court determines the document is ambiguous, "all relevant extrinsic evidence may properly be considered in resolving the ambiguity." *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 535 (Ind. 2006).

In context, the Omitted Term, "[n]o other instrumented soft tissue treatment shall be provided at any such facility," appears as follows in paragraph 3 of the Agreement:[5]

> 3. 8. At any facility providing therapy or health services in which any Defendant or any collection of Defendants, owns or controls, directly or indirectly, a 50% or more ownership interest or an ownership interest sufficient to determine management decisions, or has management powers, such Defendant(s) shall ~~require~~ [recommend and encourage] that all clinicians providing instrumented soft tissue treatment at any of those facilities: (i) be trained in ASTYM® therapy, within 6 months of this Agreement or within the first 6 months of the clinician providing care in such a facility; and (ii) maintain ASTYM® certification under an active Service Agreement with PDI during such time that clinician is providing care at such a facility. The ASTYM® training and certification maintenance shall take place under PDI's standard Service Agreement, containing terms set forth in the Service Agreements attached to the Complaint. **No other instrumented soft tissue treatment shall be provided at any such facility.** This paragraph shall apply to, without limitation, the following organizations: Colorado Physical Therapy Specialists, LLC; Texas Physical Therapy Specialists, PC; ProRehab, PC; Fit For Work LLC; Dunn Physical Therapy; Breakthrough Physical Therapy; PT Central; PT Development, LLC; and Confluent Health.

Dkt. No. 108-1 at 1 (emphasis in original).

The Defendants argue that the full context of paragraph three undermines the idea that "instrumented soft tissue treatment" is unambiguous. They contend that, because the contract requires the Defendants to "recommend and encourage" ASTYM training and certification to clinicians who are providing instrumented soft tissue treatment, such language necessarily implies that the parties knew that clinicians would provide instrumented soft tissue treatments other than ASTYM therapy. This argument, however, does not show that "instrumented soft tissue treatment" is ambiguous.

Rather, in their own ways, the parties understand that ASTYM is a form of instrumented soft tissue treatment, intervention, or mobilization.[6] *See, e.g.*, Dkt. No. 112 at 18 (Defendants

---

[5] The parties also use the term "instrumented soft tissue treatment" without further definition in another provision of the Agreement, but the Defendants do not contend that the term is ambiguous in that context: "Each of the Defendants . . . are ENJOINED from directly or indirectly . . . [t]eaching, instructing, promoting, making representations about, or advising anyone in instrumented soft tissue treatment or intervention." Dkt. No. 108-1 at 6.

[6] Although the parties dispute whether the meaning of the term "instrumented soft tissue treatment" is ambiguous, they repeatedly use this term and the following variations in their

note that "[Performance Dynamics'] ASTYM methods or techniques . . . are a subset within the much wider and pre-existing set of [instrument-assisted soft tissue mobilizations]); *see also id.* at 5 (Defendants note that "ASTYM is clearly and merely one variety of [instrument-assisted soft tissue mobilization]"); *see also* Dkt. No. 108 at 2 & 8, respectively (Performance Dynamics identifies "instrument assisted soft tissue mobilizations" as "imitators" of ASTYM and "instrumented soft tissue treatment or intervention" as "any 'knock off' methodology" of ASTYM). Even without a detailed definition of "instrumented soft tissue treatment," the language of the Omitted Term as a whole unambiguously means that no instrumented soft tissue treatment other than Performance Dynamics' ASTYM therapy shall be provided by the Defendants' clinicians. As Performance Dynamics points out, "it really doesn't matter if there are other forms of instrumented soft tissue treatment that one could confuse with ASTYM treatment." Dkt. No. 113 at 8.

The Defendants could have bargained for the "recommend and encourage" language to apply to the Omitted Term, but they did not. Instead, the parties agreed that "[no] other instrumented soft tissue treatment shall be provided at any such facility." Dkt. No. 108-1 at 1. "Under Indiana law, a party to a contract 'is presumed to understand and assent to the terms of the contracts he or she signs.'" *John M. Abbott, LLC*, 14 N.E.3d at 58 (quoting *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 418 (Ind. Ct. App. 2004)). Moreover, a party who has previously authorized a settlement remains bound by its terms even if he changes his mind. *Glass v. Rock Island Ref. Corp.*, 788 F.2d 450, 454-55 (7th Cir. 1986) ("A party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement

---

briefing: "instrument assisted soft tissue mobilization," "instrumented soft tissue mobilization," and "instrumented soft tissue intervention." For purposes of this entry, the Court assumes these terms have the same meaning.

9

insufficient."); *see also Beverly*, 817 F.3d 328 at 331 (affirming district court's enforcement of handwritten settlement agreement under Illinois law); *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 337 (7th Cir. 2000) (affirming district court's enforcement of an oral settlement agreement under Indiana law). The Defendants are sophisticated parties – they could have bargained for different terms. They failed to do so, however, and the Court must not protect parties from their own oversights.

In seeking that the Court find the Omitted Term ambiguous, the Defendants also contend that the term "instrumented soft tissue treatment" includes "common, non-commercial and non-proprietary techniques, many of which have existed and been used for a very long time" and which they say Performance Dynamics agreed were not intended to be restricted by the Agreement. Dkt. No. 112 at 19. They argue that Performance Dynamics was unwilling to alter the contract language to allow the Defendants to use certain instrumented soft tissue treatments or otherwise enter into a separate letter agreement with respect to the same. *Id.* at 20. These arguments, however, do not lead to the conclusion that the Omitted Term is ambiguous.

While Performance Dynamics agreed that the Agreement was not meant to restrict the Defendants from using certain instruments, including foam rollers, cans, or roller balls, which are not used in ASTYM therapy, and stated that it "would provide a letter to that effect if that would clarify it for [the] Defendants," it correctly noted that it had no obligation to renegotiate the unambiguous language of the Agreement. Dkt. No. 113 at 9.

Paradoxically, the Defendants also contend that "there was no clarifying definition in the [Agreement] because one is not needed if the [Omitted Term] is subject to the [']recommend and

encourage['] language referred to above."[7]  Dkt. No. 112 at 19.  Here, the Defendants undermine their contention that the term is ambiguous.  It is clear that changing the Omitted Term to "The Defendants shall recommend and encourage that no other instrumented soft tissue treatment shall be provided at any such facility" would alter the obligations of the Defendants, but that change would in no way define the term "instrumented soft tissue treatment" more concretely than the term currently found in the Agreement.

The Court finds the Omitted Term unambiguous.  Accordingly, the Defendants remain bound by its terms, even if they had a change of heart after the settlement conference.  *See Glass*, 788 F.2d at 454-55.

### C.  Essential Terms

The Defendants state that "[t]he parties and their counsel did in fact believe that after the settlement conference that [sic] they had the basis of a settlement."  Dkt. No. 112 at 9.  They argue, however, that no contract was formed by the Agreement because it "does not demonstrate agreement on multiple essential terms."  Dkt. No. 112 at 9.  Specifically, the Defendants argue that the Agreement failed to include a sum to be paid by the Defendants and specific arbitration language, including the name of an arbitrator.  Dkt. No. 112 at 9.

"[O]nly essential terms need be included in order to render a contract enforceable." *Wolvos v. Meyer*, 668 N.E.2d 671, 676 (Ind. 1996).  "The failure to demonstrate agreement on essential terms of a purported contract negates mutual assent and hence there is no contract." *Ochoa v. Ford*, 641 N.E.2d 1042, 1044 (Ind. Ct. App. 1994); *see also Schuler v. Graf*, 862

---

[7] As noted earlier, in their briefing, the Defendants state that "[t]he Defendants and their counsel acknowledge that [the Agreement should have been] revised before signature so as to make the reference to the use of other 'instrumented soft tissue treatment' subject to the 'recommend and encourage' modifying language. . . ."  Dkt. No. 112 at 3-4.

11

N.E.2d 708, 715 (Ind. Ct. App. 2007) ("If a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed.") (quotation omitted).

"Parties, [however], may make an enforceable contract which obligates them to execute a subsequent final written agreement," as long as agreement is "expressed on all essential terms that are to be incorporated in the document." *Sands v. Helen HCI, LLC*, 945 N.E.2d 176, 180 (Ind. Ct. App. 2011) (citing *Wolvos*, 668 N.E.2d at 674). That is what happened here. The parties entered into a binding contract on April 20, 2015, but planned to execute a clean version, which was "understood to be a mere memorial of the agreement already reached" on April 20, 2015. *Id.* Moreover, the Agreement is not lacking the essential terms claimed by the Defendants. Neither a settlement payment amount nor arbitration language, with the exception of the name of an arbitrator, was missing from the April 20, 2015 Agreement.[8] The Agreement includes an $85,000.00 settlement payment amount, which had been redacted in two versions of the document submitted to the Court. Performance Dynamics submitted an unredacted version of the document (Dkt. No. 113-4), which clearly shows that this term existed in the Agreement on April 20, 2015. Additionally, the arbitration language the Defendants claim was lacking on page two of the agreement appears on page six. Moreover, on both pages, the parties clearly signify, using the annotation "①," that the language on page six is the language to be incorporated into page two's text. Hence, the essential terms the Defendants claim were missing

---

[8] As Performance Dynamics argues in its response brief, the arbitration language of the Agreement contemplates a scenario where the parties do not agree on an arbitrator: "[I]n the event the parties can't agree on an arbitrator, or the arbitrator cannot serve, each party shall select an arbitrator and these shall select a third." *See* Dkt. No. 113 at 6 (quoting Dkt. No. 108-1 at 6). Because disagreement on an arbitrator was a contingency that the parties anticipated, the inclusion of an arbitrator's name was not a material or essential term.

are explicitly contained in the Agreement. Accordingly, the Court does not find the Agreement unenforceable for lack of those terms.

### D. Public Policy and Mutual Mistake

The Defendants also argue that the Omitted Term violates public policy and therefore, creates a mutual mistake that renders the contract void. They contend that the Omitted Term violates both the American Physical Therapy Association's Code of Ethics ("APTA Code of Ethics") and the corporate practice of medicine doctrine.

"Where a properly formed agreement contravenes the public policy of Indiana, . . . courts have traditionally said it is void and unenforceable." *Straub v. B.M.T. by Todd*, 645 N.E.2d 597, 599 (Ind. 1994) (explaining, however, that "[i]t may well be more exact to say that where an agreement violates public policy, no contract is created"). The doctrine of mutual mistake provides that "[w]here both parties share a common assumption about a vital fact upon which they based their bargain, and that assumption is false, the transaction may be avoided if because of the mistake a quite different exchange of values occurs from the exchange of values contemplated by the parties." *Tracy v. Morell*, 948 NE2d 855, 864 (Ind. Ct. App. 2011); *see also Stainbrook v. Low*, 842 N.E.2d 386, 397 (Ind. Ct. App. 2006). "[B]ecause [Indiana courts] value freedom of contract so highly," contracts are not automatically voided unless a statute contains clear, unambiguous language indicating that the legislature intended such a result. *Imperial Ins. Restoration & Remodeling, Inc. v. Costello*, 965 N.E.2d 723, 728 (Ind. Ct. App. 2012) (internal quotation and citation omitted). Where public policy is not explicit, for example, as here where the policy is not contained in a statute, Indiana courts "find an agreement void only if it has a tendency to injure the public, is against the public good or is inconsistent with sound policy and good morals." *Straub*, 645 N.E.2d at 599 (citations omitted). Indiana courts "support the

13

traditional precaution against the reckless use of public policy as a means for invalidating contracts . . . [and] ha[ve] embraced the notion that the power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power." *Id.* at 599 n. 3 (citations omitted).

### 1. *APTA Code of Ethics*

The Defendants argue that the Omitted Term violates the APTA Code of Ethics by "compromis[ing] the independent and objective professional judgment of the affected physical therapists by dictating what [instrument-assisted soft tissue mobilization] therapy methods and techniques they can and cannot use." Dkt. No. 112 at 12. They further contend that "restricting available services that physical therapists can provide . . . puts them in an impermissible conflict of interest between their employer and their patients." *Id.* at 12-13.

The Defendants reference the following five principles of the APTA Code of Ethics in their brief:

> Principle 3: Physical therapists shall be accountable for making sound professional judgments;
>
> Principle 3A: Physical therapists shall demonstrate independent and objective professional judgment in the patient's/client's best interest in all practice settings;
>
> Principle 3D: Physical therapists shall not engage in conflicts of interest that interfere with professional judgment;
>
> Principle 7: Physical therapists shall promote organizational behaviors and business practices that benefit patients/clients and society; and
>
> Principle 7A: Physical therapists shall promote practice environments that support autonomous and accountable professional judgment.

Assuming that the provisions of the APTA Code of Ethics express the public policy of Indiana, the Omitted Term does not violate Indiana public policy because it does not violate the APTA Code of Ethics.

The Defendants take issue with the restriction that the Omitted Term places on the services their physical therapists may provide to patients. Health care facilities, however, routinely limit the services their providers deliver to patients. *See, e.g.*, Peiyin Hung, Katy B. Kozhimannil, Michelle M. Casey, and Ira S. Moscovice, *Why Are Obstetric Units in Rural Hospitals Closing Their Doors?*, HEALTH SERVS. RES. doi: 10.1111/1475-6773.12441 (2016), http://onlinelibrary.wiley.com/doi/10.1111/1475-6773.12441/full (discussing closure of labor and delivery units in 306 rural hospitals, which, in turn, eliminated all labor and delivery services provided by local obstetricians). Additionally, in some states, physical therapists are restricted from performing any services, with very limited exception, without a physician's prescription or referral. *See, e.g.*, Ala. Code § 34-24-210.1 (providing for five circumstances under which physical therapists can perform services without a prescription or referral); Miss. Code § 73-23-35(3) (same). The Defendants themselves explain that other health care providers limit the treatment a physical therapist may offer to its patient: "[A] physical therapist can only practice physical therapy consistent with another medical professional's orders. It is easy to imagine a scenario where a medical professional orders a treatment that is not ASTYM." Dkt. No. 112 at 15-16. Physical therapists routinely practice under such restrictions, and there is no indication that these restrictions lead to impairments in professional judgment or conflicts of interest.

Similarly, the Omitted Term limits the types of instrumented soft tissue treatments offered by the Defendants' physical therapists. This limitation, likewise, does not impair the physical therapists' professional judgment or create conflicts of interest. The Court agrees with Performance Dynamics:

> Whether or not the [Omitted Term] is part of the [April 20, 2015] Agreement (and thereby whether or not 'other instrumented soft tissue treatment' is provided at [the] Defendants' facilities), the physical therapists who work at the Defendants'

15

> facilities are perfectly free (and should be encouraged) to follow the provisions of the APTA Code of Ethics.

Dkt. No. 113 at 13. If the Defendants' physical therapists cannot provide a particular treatment to a patient by reason of limitations set forth in the Agreement or otherwise, as Performance Dynamics points out, APTA Code of Ethics Principle 3C provides guidance on referring patients to other practitioners: "'Physical therapists shall make judgments within their scope of practice and level of expertise and shall communicate with, collaborate with, or refer to peers or other health care professionals when necessary.'" *Id.* (quoting Dkt. No. 112-3 at 2). Accordingly, even if Indiana recognized the APTA Code of Ethics as its public policy, the Omitted Term does not violate it.

### 2. *Corporate Practice of Medicine Doctrine*

The Defendants also contend that the Omitted Term violates public policy because it contravenes the corporate practice of medicine doctrine, which "protect[s] [a medical] practitioner's professional autonomy from lay interference or commercial exploitation." Dkt. No. 112 at 13 (internal quotation omitted). Generally, the corporate practice of medicine doctrine requires that medical service providers be licensed and prohibits the ownership of medical practices by non-licensed entities and individuals. As the Defendants explain, the rationale underlying the doctrine "protect[s] physician-patient relationships from being undermined by the intrusion of a lay corporation not bound by medical ethics . . . [and] also prevents employee practitioners from feeling a divided sense of loyalty between the profit-seeking employer and the treatment-seeking patient." *Id.* at 14 (internal quotations omitted).

As the Defendants correctly indicate, the corporate practice of medicine doctrine applies in various forms in Indiana, Colorado, and Texas.[9]  However, neither Indiana nor Texas explicitly recognize a prohibition on the corporate practice of physical therapy.  Rather, with exceptions for certain corporate forms, Indiana recognizes the doctrine's applicability to physicians and dentists.  *See* Ind. Code §§ 25-22.5-1-2; 25-14-1-1.  Texas similarly limits the doctrine's application to licensed physicians.  *See McCoy v. FemPartners, Inc.*, 484 S.W.3d 201, 205 (Tex. Ct. App. 2015) (examining statutes codifying Texas corporate practice of medicine doctrine).  The Court declines to impose prohibitions where they have not been imposed by the legislatures or courts of Indiana and Texas.  Accordingly, the Court finds that the corporate practice of medicine doctrines found in those states are inapplicable to physical therapists and, therefore, are not violated by the Omitted Term.

Colorado, however, recognizes a corporate practice of medicine doctrine that prohibits the practice of physical therapy by certain types of corporations.  *See* Colo. Rev. Stat. § 12-41-124.  Without a definitive statement from the Defendants, the Court presumes, as Performance Dynamics did, that Defendant Colorado Physical Therapy Specialists, LLC, P.C., was formed under a corporate exception within the statute, thus allowing the corporation to practice physical therapy.  For physical therapists working for such corporations, Colorado statute directs that "[n]othing in this section diminishes or changes the obligation of each person licensed to practice physical therapy and employed by the corporation to practice in accordance with the standards of professional conduct under this article and rules adopted under this article."  Colo. Rev. Stat. § 12-41-124(3).  Furthermore, the statute prohibits the corporation from doing anything "that, if

---

[9] The Court notes that Defendant Evidence in Motion, LLC is a Kentucky limited liability company.  *See* Dkt. No. 107 at 2.  The Defendants do not argue that Kentucky public policy voids the Omitted Term or the Agreement, so the Court does not address the issue.


done by a person licensed to practice physical therapy and employed by the corporation would constitute any ground for disciplinary action, as set forth in section 12-41-115." Colo. Rev. Stat. § 12-41-124(2). Having reviewed the grounds for disciplinary action found in Colorado Revised Statute section 12-41-115 and the "Colorado Physical Therapist Licensure & Physical Therapist Assistant Certification Rules and Regulations" found in volume 4, section 732-1 of the Colorado Code of Regulations, the Court concludes that the Omitted Term does not violate Colorado's corporate practice of medicine doctrine as applied to physical therapists.

In sum, the Court finds no mutual mistake based on a violation of public policy, either by way of the APTA Code of Ethics or the corporate practice of medicine doctrine. Consequently, the Defendants have not demonstrated that the Agreement is unenforceable due to violation of Colorado, Kentucky, Indiana, or Texas public policy.

### III. CONCLUSION

The Defendants have failed to provide the Court with reason to find the April 20, 2015, Agreement unenforceable. Therefore, the Court GRANTS the Plaintiff's motion to enforce mediation agreement (Dkt. No. 104). The parties shall submit to the Court a proposed injunction within 14 days of the date of this Entry.

SO ORDERED: 7/18/16

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.