UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PERFECT DYNAMICS, INC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) CAUSE NO. 1:13-cv-298-WTL-TAB ) |
| TIMOTHY W. FLYNN *et al.*, | ) ) |
| Defendants. | ) |

PERFORMANCE DYNAMICS, INC,

Plaintiff,

vs.          CAUSE NO. 1:13-cv-298-WTL-TAB

TIMOTHY W. FLYNN *et al.*,

Defendants.

### ENTRY ON DEFENDANTS' MOTION TO RECONSIDER

On July 18, 2016, the Court granted the Plaintiff's motion to enforce mediation agreement and requested that the parties submit to the Court a proposed injunction within fourteen days. *See* Dkt. No. 115. The Court granted two extensions of time for the parties to submit the proposed injunction. *See* Dkt. No. 117 & 119. Instead of filing a proposed injunction, the Defendants filed the instant motion on August 25, 2016 (Dkt. No. 120). The Defendants ask the Court to reconsider its decision to deny the parties' request for a hearing and also ask the Court to reconsider in its entirety its Entry on the Plaintiff's motion to enforce mediation agreement. The Defendants further request, in the alternative, that the Court reform the mediation agreement. For the reasons explained below, the Defendants' motion to reconsider is **DENIED**.

### I.   DISCUSSION

The Court incorporates by reference the background information set forth in its July 18, 2016, Entry granting the Plaintiff's motion to enforce mediation agreement. For ease of reference, the Court reiterates the following points of information contained in its July 18, 2016, Entry:

On April 20, 2015, a settlement agreement was executed at a court-ordered settlement conference (the "Agreement"). The Agreement was memorialized on seven pages, including two pages containing handwritten mark-ups to a document that had been provided by the Plaintiff's counsel to defense counsel on April 17, 2015; a sheet of notebook paper with handwritten notes; and three pages containing handwritten mark-ups to a proposed permanent injunction entry provided by the Plaintiff's counsel to defense counsel on April 16, 2015.

The Defendants' counsel agreed to compose a clean, typewritten version of the Agreement. On June 4, 2015, the Defendants' counsel sent a typed document entitled "Settlement Agreement and Mutual Release" to the Plaintiff's counsel. The typed document intentionally omitted the following term from the Agreement: "No other instrumented soft tissue treatment shall be provided at any such facility" (the "Omitted Term").

### A.     Reconsideration of Denial of Request for Hearing

The Defendants seek a hearing because they assert that they "can and will present evidence, clarify or explain their prior arguments, respond to the Court's questions, and otherwise be heard on a matter of great importance to them and their livelihoods." Dkt. No. 120 at 3. The Defendants note that the Court stated in a footnote to its Entry that neither party provided the Court with information suggesting that they believed an evidentiary hearing necessary. *See id.* at 4. As the Defendants correctly indicate, however, they provided such information to the Court in the conclusion of their response to the Plaintiff's motion to enforce mediation agreement. *See id.* (quoting Dkt. No. 112 at 21). At that time, the Defendants suggested that they would call a number of witnesses who "would testify as to the applicable professional ethical obligations, the settlement conference and subsequent negotiations, IASTM, the disputed sentence and its implications under the corporate practice of medicine doctrine, and

2

the issues discussed in this brief and the supporting exhibits." Dkt. No. 112 at 21. The Defendants maintain that the reasons it presented in its earlier request remain valid reasons for a hearing. Dkt. No. 120 at 4. The Court, however, has considered evidence pertaining to all areas that the Defendants suggested they would discuss at a hearing and finds no reason to reconsider previously rejected arguments.[1]

The Defendants also now indicate that they will "provide further evidence that they in fact advised the mediator, opposing counsel, and opposing parties that they could not ethically agree to any provision that did not include such modifying language and therefore would not do so," *id.* at 2, and that they "have presented additional evidence that they did in fact bargain for the 'recommend and encourage' language to apply to [the Omitted Term]," *id.* at 4. They did not, however, specify what this new evidence is, and they instead refer only to the prior affidavit of the Defendants' counsel, which was submitted to this Court prior to its July 18, 2016, Entry. *See, id.*

In drafting its July 18, 2016, Entry, the Court considered evidence, including the affidavit of the Defendants' counsel, that the Defendants advised the Magistrate Judge, the Plaintiff, and the Plaintiff's counsel that they "'would not agree to any provision . . . that would limit the use of treatments that individual physical therapists in their professional judgment deemed necessary and appropriate for their patients.'" Dkt. No. 115 at 4 (quoting Dkt. No. 112 at 4). In addition, at the time of its Entry, the Court reviewed the Defendants' evidence that it bargained for language modifying the Omitted Term. *See, e.g.*, *id.* at 8-9. The Court further understood at the

---

[1] Should the Defendants contend that the Court did not address each of its assertions, "[m]erely because a fact or argument has not been explicitly laid out does not mean that it has not been given serious consideration by the court." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 994 (7th Cir. 2004).

time of its Entry that the Defendants attempted for months to modify the Omitted Term following its execution of the Agreement.

Resubmission to the Court of previously rejected arguments is not an appropriate use of a motion to reconsider. This Court's opinions are not intended as first drafts subject to revision and reconsideration at the litigant's pleasure. The Defendants have not given a good reason to alter the Court's prior entry. The Court does not require further evidence clarifying the Defendants' prior arguments. It understands perfectly well the Defendants' position: "Undersigned counsel [Benjamin C. Fultz] signed the agreement in question without the modifying language that [the Defendants argue] was supposed to accompany the [Omitted Term]. The inclusion of the [Omitted Term] without modification was a mistake." Dkt. No. 120 at 5.

The fact remains that the Defendants - both their counsel, Benjamin C. Fultz, and Defendant Laurence Benz, who is also a president, owner and member, partner, and/or principal of Defendant Texas Physical Therapy Specialists, PC; and a principal, member, and/or partner of Defendant Evidence in Motion, LLC[2] - signed the Agreement, which included the Omitted Term. As previously explained by the Court, "[u]nder Indiana law, a party to a contract is presumed to understand and assent to the terms of the contracts he or she signs." Dkt. No. 115 at 9 (quoting *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014) (internal quotation omitted)).

The Defendants also now wish to "present evidence that the consequences on their businesses and professional practices of not including the modifying language [*i.e.*, adding

---

[2] *See* Dkt. No. 72 ¶¶5, 7, 8, & 11 for the Defendants' admission of the allegations contained in Dkt. No. 69 ¶¶5, 7, 8, & 11, which contain the aforementioned facts.

'recommend and encourage' to the Omitted Term] are so significant that the Defendants would not have knowingly ever agreed to a settlement that did not include the modifying language." Dkt. No. 120 at 2.  As the Court has previously stated, it is not this Court's responsibility to protect parties from their own oversights.  Dkt. No. 115 at 9-10 (citing *Glass v. Rock Island Ref. Corp.*, 788 F.2d 450, 454-55 (7th Cir. 1986); *Beverly v. Abbott Labs.*, 817 F.3d 328, 331 (7th Cir. 2016); and *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 337 (7th Cir. 2000)).  Evidence concerning the ramifications to the Defendants of having executed the Agreement does not in any way assist the Court in ruling on the Plaintiff's motion to enforce the Agreement.  The Court refuses to grant a hearing on this basis and therefore denies the Defendants' request for a hearing.

### B.     Reconsideration of Entry to Enforce Mediation Agreement

The Defendants also request that the Court reconsider in its entirety its July 18, 2016, Entry enforcing the Agreement.  They renew several arguments that were previously rejected by the Court.  As the Court has already mentioned, a motion to reconsider is not an opportunity for the parties to submit to the Court previously rejected arguments.  Therefore, the Court will not reopen the door for the Defendants to take a second bite at the apple as to arguments the Defendants have previously presented.

That said, the Court is compelled to comment on one argument made by the Defendants, because they misrepresent the terms of the Agreement and suggest that the Court did not consider the argument when it issued its July 18, 2016, Entry.  *See* Dkt. No. 115 at 8 (Court's addressing the argument in its July 19, 2016, Entry).  The Defendants argue that they "bargain[ed] for the 'recommend and encourage' language to apply to the [Omitted Term]" and that that position "is supported by the preceding sentence in the [Agreement]."  Dkt. No. 120 at

4. They argue that the preceding sentence "presupposes that there will be clinicians at those facilities providing [other] instrumented soft tissue treatment and thus contradicts the [Omitted Term]."[3] *Id.* at 4-5; *see also* Dkt. No. 122 at 3. The Agreement reads, in relevant part:

> Defendant(s) shall recommend and encourage that all clinicians providing instrumented soft tissue treatment at any of those facilities: (i) be trained in ASTYM® therapy, *within 6 months of this Agreement or within the first 6 months of the clinician providing care in such a facility*; and (ii) maintain ASTYM® certification *under an active Service Agreement with PDI during such time that clinician is providing care at such a facility*.

Dkt. No. 108-1 at 1 (emphasis added).

In both their motion and response brief, the Defendants abbreviated the Agreement's actual language to instead say that "the defendants shall 'recommend and encourage that all clinicians providing instrumented soft tissue treatment at any of those facilities' be trained in ASTYM and maintain ASTYM certification." Dkt. No. 120 at 4-5 (emphasis omitted); *see also* Dkt. No. 122 at 2-3. The Defendants rightfully argue that this truncated version of the term supports their position and perhaps "flatly contradicts [the] Plaintiff's position." Dkt. No. 122 at 3. But the term as the Defendants presented it is not found in the Agreement. The Agreement's actual term, as shown above, recommends and encourages *a specific time frame* for clinicians who provide instrumented soft tissue treatment at the pertinent facilities to be trained in ASTYM - either within six months of the Agreement, if they are already working at a facility, or within the first six months of providing care in a facility. The second condition of the sentence recommends and encourages that clinicians maintain ASTYM certification under an active service agreement with the Plaintiff during such time that the clinician provides care at a covered facility. These statements do not contradict the Plaintiff's position or the Omitted Term and do

---

[3] Contrary to the Defendants' intimation, the sentence they refer to does not directly precede the Omitted Term. There is a sentence between it and the Omitted Term.

not "presuppose[] that there will be clinicians at those facilities providing [other] instrumented soft tissue treatment," as the Defendants argue. *Id.* This contractual term therefore does not support reconsideration of the Court's previous ruling.

The Defendants also present a new reason that they believe warrants the Court's reconsideration of its July 18, 2016, Entry: "Reconsideration and a hearing are also appropriate so that prior to finality[,] the Defendants can have the opportunity to retain and get the benefit of additional or altogether different counsel if they so choose[,] given the current circumstances and posture of the matter." Dkt. No. 120 at 5. The concern described by the Defendants, though, existed as soon as the Defendants determined that they did not want the Agreement enforced as executed on April 20, 2015, which was well before this Court's July 18, 2016, Entry. Any concerns the Defendants had regarding their counsel could and should have been addressed once the Plaintiff filed its motion to enforce the Agreement. The Court declines to reopen the matter on this basis.

### C.     Reformation of the Agreement

The Defendants seek, in the alternative, reformation of the Agreement. They request that the Court modify the Omitted Term to make it "subject to the 'recommend and encourage' modifying language."[4] Dkt. No. 120 at 6. As the Defendants acknowledge, they "did not previously seek equitable reformation, arguing instead that there was no enforceable agreement to be reformed." *Id.* Again, a motion to reconsider is not the appropriate means for raising arguments that could have been made at an earlier time. At the time the Defendants argued that

---

[4] Although the Defendants do not provide the precise language of the term that they say they proposed at the settlement conference, the Court presumes the Defendants suggest that the modifying language and a new subject be added to the Omitted Term to create the following term: "The Defendants shall recommend and encourage that no other instrumented soft tissue treatment shall be provided at any such facility."

7

there was no enforceable agreement, they should have argued, in the alternative, that equity required reformation of the Agreement. The Defendants chose not to make such an argument.

The Court, nonetheless, will now consider the Defendants' new argument. The Defendants acknowledge that there are only two conditions under which equity intervenes in a contract under Indiana law: where there is mutual mistake and where "one party executes the document and the other party acts fraudulently or inequitably while having knowledge of the other's mistake."[5] *Gierhart v. Consol. Rail Corp.-Conrail*, 656 N.E.2d 285, 287 (Ind. Ct. App. 1995). "Equity should not intervene 'where the complaining party failed to read the instrument, or, if he read it, failed to give heed to its plain terms.'" *Mid-States Gen. & Mech. Contracting Corp. v. Town of Goodland*, 811 N.E.2d 425, 435 (Ind. Ct. App. 2004) (quoting *Estate of Spry v. Greg & Ken, Inc.*, 749 N.E.2d 1269, 1275 (Ind. Ct. App. 2001)).

The Defendants do not allege that the Plaintiff acted fraudulently. Nor do they allege that their mistake was induced by a misrepresentation by the Plaintiff. *See Mid-States Gen. & Mech. Contracting Corp*, 811 N.E.2d at 435 (Ind. Ct. App. 2004) ("[A] contract generally may not be avoided [or, presumably, reformed] for unilateral mistake unless the mistake was induced by the misrepresentation of the opposite party"). Rather, the Defendants seek reformation based on alleged inequitable conduct by the Plaintiff. The party seeking reformation for this reason "has the burden of proving the alleged fraud [or inequity, in this instance,] and his resultant mistake." *Ruff v. Charter Behavioral Health Sys. of N.W. Ind., Inc.*, 699 N.E.2d 1171, 1173 (Ind. Ct. App. 1998), trans. denied, 714 N.E.2d 170 (Ind. 1999) (citing *Kruse, Kruse & Miklosko, Inc. v. Beedy*, 353 N.E.2d 514, 529 (Ind. Ct. App. 1976)).

---

[5] The Defendants acknowledge that the Court determined that no mutual mistake existed. *See* Dkt. No. 120 at 6 (citing Dkt. No. 115 at 18).

The Defendants argue that they "made a mistake by not including the modifying language, and [the] Plaintiff, knowing that [the] Defendants had expressed the necessity of such language, acted inequitably by proceeding to consummate the agreement without it, thereafter refusing to add it, and attempting to enforce the agreement without it." Dkt. No. 120 at 6. The Defendants' counsel's affidavit indicated that he "advised the participants [of the April 20, 2015 settlement conference] that while the [D]efendants could not ethically agree to any such provision[,] they could agree to 'recommend and encourage' the use of ASTYM."[6] Dkt. No. 112-2 ¶ 8. The Plaintiff acknowledges that the Defendants' counsel raised a concern "early in the negotiations" regarding restrictions on the use of treatments deemed necessary for patients. *See* Dkt. No. 121 at 6. However, "[t]he Plaintiff's representatives understood this to be posturing for negotiating a settlement." *Id.* It is by no means unusual for a party's position to change substantially during the course of settlement negotiations. There is nothing inequitable about the fact that the Plaintiff believed that to be the case with respect to the Defendants' position regarding the Omitted Term. Given the lack of fraud or inequitable conduct, reformation is not an appropriate remedy.

## II.     CONCLUSION

After carefully reviewing the Court's July 18, 2016, Entry and considering the Defendants' motion to reconsider, for the reasons explained above, the Court denies the Defendants' request for a hearing; denies the Defendants' request that the Court reconsider its Entry to enforce the Agreement; and denies the Defendants' request that the Court reform the

---

[6] The Court believes the Defendants meant "any such provision" to refer to the Omitted Term.

mediation agreement.  Accordingly, the Defendants' motion to reconsider (Dkt. No. 120) is **DENIED** in its entirety.

The Court again directs the parties to submit a proposed injunction within 10 days of the date of this Entry.  If the parties do not do so, the Court will rely on and evaluate the injunction contained in the Agreement.  No extensions of time to file the proposed injunction shall be granted without good cause shown.

SO ORDERED: 3/3/17

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification